# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANTHONY DAVIS,**

    Petitioner,

    v.                                                    Case No. 17-CV-212

**JENNIFER McDERMOTT,**[1]

    Respondent.

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

Anthony Davis was charged in Wisconsin state court with recklessly causing great bodily harm to his three-month-old daughter, convicted by a jury, and sentenced to fifteen years' imprisonment. He filed a post-conviction motion, arguing that his trial lawyer erred when he failed to impeach the baby's mother with her prior criminal convictions. The state courts rejected Mr. Davis's claim, finding that he had not demonstrated that he was prejudiced by his counsel's alleged error. Mr. Davis is currently serving his sentence at Kettle Moraine Correctional Institution in Plymouth, Wisconsin.

In 2017, Mr. Davis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the United States

---

[1] Jennifer McDermott has replaced Robert Humphreys as warden of Kettle Moraine Correctional Institution. Accordingly, Ms. McDermott is substituted as the named respondent in this action pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

Constitution because his trial lawyer provided ineffective assistance of counsel. The respondent maintains that Mr. Davis has not satisfied his burden of proving that his claim merits relief under the deferential standards set forth in § 2254. The Court agrees. Because the state court's decision denying Mr. Davis's ineffective-assistance claim is not objectively unreasonable, Davis is not entitled to relief under § 2254. The Court therefore will deny his habeas application.

## I. Background

On May 14, 2013, Lakiesha Bowie took her three-month-old daughter, LD, to Children's Hospital after LD woke up with bruising around her face and red spots in her eyes. *See* Exhibit 1 to Answer to Petition for a Writ of Habeas Corpus 2, ECF No. 13-1. After being examined by Angela Rabbitt, a pediatric child-abuse specialist, it was determined that LD had suffered bruising and hemorrhages to her eyes; fractures to her left tibia, left fibula, and both femurs; and a tear to the tissue connecting her upper lip to her gums. Ex. 1, at 2–3. Dr. Rabbitt told Milwaukee police that LD's injuries were consistent with child abuse. Ex. 1, at 3–4.

Officer Amy Stolowski interviewed Ms. Bowie at the hospital during the early morning hours of May 15, 2013. Ms. Bowie told Officer Stolowski that she had taken LD to the hospital five times in the last month, as LD had been very fussy. She also reported noticing similar bruising around LD's left eye within the last month. But Ms. Bowie had no explanation as to a potential cause for LD's broken bones. According to Ms. Bowie, she and LD's father, Anthony Davis, were LD's only caregivers. Ex. 1, at 2.

The police also interviewed Mr. Davis at the hospital. He confirmed that he lived with Ms. Bowie and LD. However, Mr. Davis did not have any explanation for LD's injuries or what caused them. Ex. 1, at 2.

Mr. Davis was nevertheless taken into custody on suspicion of child abuse and interviewed by Detective Marilynn Francis. At first, he denied knowing how LD broke her legs. But he eventually admitted to hearing a popping sound a few days prior when he had LD stand up while holding onto his finger. Mr. Davis also admitted to playing too rough with LD and that Ms. Bowie had told him to be gentle with her. When Mr. Davis demonstrated on a doll how he changed LD's diaper, he spread the doll's legs extremely wide and pushed the legs to its chest. Mr. Davis stated that LD often cried when he changed her diaper. Ex. 1, at 2–3.

### A. Circuit Court proceedings

On May 18, 2013, Mr. Davis was charged in Milwaukee County Circuit Court with one count of physical abuse of a child by recklessly causing great bodily harm. *See* Exhibit 8 to Answer ¶ 1 n.1, ECF No. 13-8; *see also State v. Davis*, 885 N.W.2d 807 (Wis. Ct. App. 2016). A second child-abuse charge was added a few days later after it was discovered that LD also had six broken ribs. *See* Ex. 1. Mr. Davis was appointed counsel through the state public defender's office. *See* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody 11, ECF No. 1. Prior to trial, the parties stipulated that Ms. Bowie, a State witness, would admit to eight prior convictions; if he testified, Mr. Davis, would admit to five prior convictions. Ex. 8, ¶ 2.

Multiple witnesses testified at trial. Officer Stolowski indicated that she interviewed Mr. Davis at the hospital and that he had no explanation for LD's injuries. Ex. 8, ¶ 3. Detective Francis stated that Mr. Davis also initially denied having any knowledge about the source of LD's injuries during his custodial interview. Ex. 8, ¶ 4. But eventually Mr. Davis admitted that LD had fallen off a bed and a rocker, that he had heard a popping sound while walking with LD the day before her hospital visit, and that Ms. Bowie had complained about him being too rough with LD. The Francis interview was recorded, and portions of it were played for the jury.

Ms. Bowie testified that she had taken LD to the hospital several times during the month prior to the May hospitalization. Ex. 8, ¶ 5. She further testified that she and Mr. Davis were LD's sole caregivers. Ms. Bowie claimed that she was confused about the cause of LD's injuries and that she told doctors that she rolled over LD while co-sleeping one time. According to Ms. Bowie, Mr. Davis was also at the hospital that day, and he never mentioned that he could have caused LD's injuries. Ms. Bowie also identified Mr. Davis's voice in several jail calls in which Mr. Davis admitted to using drugs and sitting on LD. However, Ms. Bowie claimed that she was unaware that Mr. Davis used drugs. Ms. Bowie was not asked about her prior convictions. *See* Exhibit 14 to Answer 36:25–83:3, ECF No. 13-14.

Dr. Rabbitt described LD's injuries and opined that they were likely caused by child abuse. Ex. 8, ¶ 6. She explained that the injuries were rare for a non-mobile infant, that the hemorrhages and bruising could be indicative of blunt-force trauma,

4

and that the broken legs were consistent with them being pulled and twisted or shaken violently. According to Dr. Rabbitt, LD's injuries could not have been caused by Ms. Bowie rolling onto her while sleeping.

Mr. Davis testified in his own defense. After acknowledging that he had five prior convictions, *see* Exhibit 15 to Answer 44:10–15, Mr. Davis told the jury that he never squeezed, shook, or pulled LD, *see* Ex. 8, ¶ 7. He did, however, admit that a few days prior to the May hospitalization he used cocaine and accidentally sat on LD for "a couple of seconds" inside a motel room where the family was staying; Mr. Davis claimed that he weighed 315 pounds at the time. Mr. Davis also admitted that he had told the police that Ms. Bowie was a wonderful mother.

The jury ultimately found Mr. Davis guilty of both charges. Ex. 8, ¶ 1. He was sentenced to ten years of initial confinement and five years of extended supervision on each charge; the sentences were to be served concurrently. Exhibit 2 to Answer, ECF No. 13-2.

### B. Post-conviction proceedings

Mr. Davis was appointed new counsel for post-conviction proceedings. Pet. 11–12. He filed a motion seeking a new trial, claiming that he was denied his right to the effective assistance of counsel. *See* Exhibit 4 to Answer, ECF No. 13-4. The trial court denied the motion without a hearing in a written decision and order. *See* Ex. 4. Mr. Davis appealed, arguing that his convictions were invalid because broken bones are insufficient as a matter of law to constitute great bodily harm and his trial lawyer was ineffective for failing to impeach Ms. Bowie with her prior

convictions. *See* Pet. 3; *see also* Exhibit 5 to Answer, ECF No. 13-5; Exhibit 6 to Answer, ECF No. 13-6, Exhibit 7 to Answer, ECF No. 13-7.

The Wisconsin Court of Appeals rejected both arguments and affirmed Mr. Davis's judgment of conviction and the order denying his post-conviction motion. The court examined the relevant statutes and determined that a reasonable jury could conclude that Mr. Davis caused LD great bodily harm when he broke her legs and ribs. Ex. 8, ¶¶ 13–22. The court also determined that trial counsel's failure to impeach Ms. Bowie with her prior convictions was not prejudicial under *Strickland v. Washington*, 466 U.S. 668 (1984):

> We agree with the postconviction court's analysis. Even if trial counsel had impeached Bowie with the fact of her prior convictions, the jury still would have heard from the multiple witnesses who testified as to L.D.'s injuries, L.D.'s health history, Bowie's care for her child, and Davis's changing stories as to the possible causes of L.D.'s injuries. Counsel's failure to impeach Bowie does not undermine our confidence in the outcome. Evidence of Bowie's prior convictions would not have sufficiently undermined her credibility so as to alter the outcome of the trial.

Ex. 8, ¶¶ 23–28.

Mr. Davis sought review of the appellate court's decision. *See* Exhibit 9 to Answer, ECF No. 13-9. The Wisconsin Supreme Court summarily denied his petition for review on December 13, 2016. Exhibit 10 to Answer, ECF No. 13-10. Mr. Davis did not file a petition for certiorari with the United States Supreme Court. *See* Pet. 4.

6

## C. Habeas proceedings

On February 14, 2017, Mr. Davis filed a federal habeas petition alleging two grounds for relief: (1) trial counsel was ineffective for failing to impeach Ms. Bowie with her prior criminal convictions; and (2) there was insufficient evidence to sustain a conviction for "great bodily harm." Pet. 6–8. The matter was randomly assigned to this Court, and all parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 6, 10 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)).

The Court screened the Petition according to Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts and determined that Mr. Davis's second claim was not cognizable under 28 U.S.C. § 2254. *See* Order on Petitioner's Motion for Leave to Proceed Without Prepaying the Filing Fee and Rule 4 Review 3–4, ECF No. 7. However, the Court allowed Mr. Davis to proceed on his ineffective-assistance-of-counsel claim and ordered a response from the State. *Id.* at 4–5. That claim is now fully briefed and ready for disposition. *See* Petitioner's Brief, ECF No. 14; Respondent's Brief Opposing Petition for a Writ of Habeas Corpus, ECF No. 24; Petitioner's Response, ECF No. 25.

## II. Standard of Review

Federal habeas corpus review is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws

or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628 F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall,* 134 S. Ct. 1697, 1702 (2014).

"A legal principle is 'clearly established' within the meaning of [28 U.S.C. § 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.).

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it

8

should apply." *Id.* at 407 (citing *Green v. French*, 143 F.3d 865, 869–70 (4th Cir. 1998)). A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Kubsch*, 838 F.3d at 859 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). To obtain relief under 28 U.S.C. § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

9

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

### III. Discussion

Mr. Davis claims that he was deprived of his Sixth Amendment right to the effective assistance of counsel when his trial lawyer failed to impeach Ms. Bowie with her prior criminal convictions.

### A. Applicable law

Criminal defendants have a constitutional right to the effective assistance of counsel. *Strickland*, 466 U.S. at 686 (citing *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner must demonstrate (1) "that counsel's performance was deficient" and (2) "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. A petitioner satisfies the first prong if he demonstrates that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687–88. To satisfy the second prong, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly deferential." *See Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

**B. Analysis**

The Wisconsin Court of Appeals accurately recited the *Strickland* test and reasonably applied its principles to Mr. Davis's case. Multiple witnesses testified about LD's significant injuries, and both Ms. Bowie and Mr. Davis testified that LD was almost always in their custody. While Ms. Bowie's statements remained substantially consistent, Mr. Davis's story evolved substantially from his first interview to his testimony at trial. He was unable to provide an explanation for LD's injuries when interviewed by Officer Stolowski at the hospital, and he initially denied having any knowledge about the source of LD's injuries to Detective Francis. However, Mr. Davis eventually admitted that LD had fallen off a bed and a rocker the day before the hospitalization and that he heard a popping noise while walking her. The jury also heard a jail call in which Mr. Davis admitted to a relative that he accidentally sat on LD while he was high on cocaine. The Wisconsin Court of

Appeals reasonably determined, based on this evidence, that there was not a reasonable probability of a different outcome had the jury also heard that Ms. Bowie had eight prior convictions.

Mr. Davis argues that his lawyer's failure to impeach Ms. Bowie was crucial, as "[t]he jury was presented with two conflicted stories by both parents, blaming each other" but "only Mr. Davis credibility was weighed down by his five prior convictions." Petr's Br. 4. The trial record does not support his characterization of the evidence. Mr. Davis denied abusing LD, but he didn't blame Ms. Bowie for LD's injuries. *See* Ex. 15, at 44:10–75:16. Indeed, Mr. Davis told police that Ms. Bowie was a wonderful, loving, and caring mother. *Id.* ¶¶ 74:20–24.

The closest the defense came to shifting blame to Ms. Bowie was during closing arguments, when Mr. Davis's lawyer criticized Bowie for leaving LD alone on the motel-room bed, *see id.* ¶¶ 104:15–105:1, and implied that she could have caused the bruising while co-sleeping with LD, *see id.* ¶¶ 105:7–21. But the defense did not offer any evidence to suggest that Ms. Bowie caused LD's broken bones. Instead, the defense argued that Mr. Davis may have negligently injured LD when he used cocaine and accidentally sat on her inside a darkened motel room. *See id.* ¶¶ 101:1–109:6. Ms. Bowie actually causing LD's injuries was not, as Mr. Davis suggests, *see* Petr's Resp. 4, "a central theme of the defense."

Mr. Davis also argues that "[t]he lower court erred by substituting their judgment of [Ms. Bowie's] credibility for the jury's." Petr's Br. 4. This criticism, however, is leveled at the trial court, not the Wisconsin Court of Appeals. In

12

rejecting Mr. Davis's ineffective-assistance claim, the appellate court did not rely on the trial court's credibility determinations. *Compare* Ex. 4, at 4–5 *with* Ex. 8, ¶¶ 27–28. Habeas review is limited to the appellate court's reasoning. *See Dassey*, 877 F.3d at 302. And Mr. Davis has not shown that its decision was objectively unreasonable.

## IV. Conclusion

The Wisconsin Court of Appeals' decision denying Mr. Davis's ineffective-assistance-of-counsel claim was not contrary to clearly established Supreme Court precedent, did not involve an unreasonable application of such precedent, and was not based on an unreasonable determination of the facts before it. The Court therefore will deny Mr. Davis's application for habeas relief under § 2254.

## V. Certificate of Appealability

There is one final matter to address. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." *See* Rule 11(a) of the Rules Governing Section 2254 Cases. A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Court finds that Mr. Davis is not entitled to a certificate of appealability. Mr. Davis has not demonstrated "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Of course, Mr. Davis has a right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Anthony Davis's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody, ECF No. 1, is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 22nd day of May, 2019.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge